# LINCOLN v. GRANT.

OVERDUE NEGOTIABLE NOTE; DEFENSES; SET-OFF; FAILURE OF CONSIDERATION.

1. The indorsee of a negotiable note after maturity takes it subject to defenses which affect the instrument itself, and not subject to matters of defenses, such as set-off, arising out of independent transactions between the maker and payee.

2. An "assignee of a non-negotiable debt" against whom the defendant may set off any indebtedness to him of the assignor under sec. 1566 of the Code (31 Stat. at L. 1423, chap. 854) does not include the indorsee of a negotiable overdue promissory note.

NOTE.—For authorities upon the question of right to set off against transferee of negotiable paper after maturity, claim against original payee, see notes in 23 L.R.A. 326, and 39 L.R.A. (N.S.) 658.

On defense of fraud as against holder of negotiable paper transferred after maturity, see note in 46 L.R.A. 768.

3. Fraud in the inception of a negotiable note on account of which the consideration wholly fails constitutes a good defense against an indorsee after maturity. (Citing *Riley* v. *Mattingly*, 42 App. D. C. 290, 294; *Durant* v. *Murdock*, 3 App. D. C. 114, 120; *Hazen* v. *Van Senden*, 43 App. D. C. 161.)

No. 3077.   Submitted January 10, 1918.   Decided April 1, 1918.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, entered for want of a sufficient affidavit of defense, in an action on a promissory note.

The COURT in the opinion stated the facts as follows:

Appeal from a summary judgment under the 73d rule for the plaintiff, Harry A. Grant, appellee here, in the supreme court of the District.

Plaintiff declared upon a promissory note for $493.59 which had been signed by the defendant, S. Dana Lincoln, payable to the Standard Lime & Stone Company, and indorsed after maturity to the plaintiff. In the second count of the declaration it is alleged that this note was a renewal of a note given as the result of an accounting between the original payee and the defendant.

The defendant pleaded the general issue and set-off. In his affidavit of defense he alleges "that the plaintiff acquired the note sued upon several months after maturity, and with knowledge that it had been dishonored at maturity." Defendant "further avers that the note sued upon was procured by the payee, the Standard Lime & Stone Company, by fraud in its very inception, and that the consideration therefor has wholly failed in that the said payee refused to allow the said credit of $301.17 * * *, and for the further reason that when the said note was procured of the affiant by the payee, the said Standard Lime & Stone Company, wrongfully and fraudulently concealed and withheld from the affiant an accounting of sales of its crushed or broken stone made directly to persons in the District of Columbia, upon which commissions were due this affiant, hereinafter referred to, which accounting it was in duty

bound to render on the occasion of an adjustment of the respective accounts of the said payee and this affiant, and which knowledge was exclusively in the possession of the said Standard Lime & Stone Company, its agents or representatives."

It is further alleged that there was an agreement between the Standard Lime & Stone Company and the defendant under which the defendant was to represent the company as sales agent in the District of Columbia, and that the company agreed to allow the defendant "a commission or profit of 5 cents per ton on each and every ton of crushed or broken stone sold by it to all persons in the District of Columbia, whether or not the sale was made through this affiant or made by the Standard Lime & Stone Company directly to purchasers;" that defendant duly complied with the terms of that agreement; that since the execution and delivery of the note in suit "affiant for the first time learned that sales of crushed or broken stone in large quantities had been made by the Standard Lime & Stone Company" to certain named purchasers, "for which no accounting or report was ever made to this affiant by the Standard Lime & Stone Company, contrary to and in violation of its agreement, on which sales there are commissions due affiant from the Standard Lime & Stone Company of $1371.85," etc.

*Mr. L. P. Loving* and *Mr. L. L. Hamner,* for the appellant, in their brief cited:

*American Seeding Mach. Co.* v. *Slocum,* 108 N. Y. Supp. 1042; *Armstrong* v. *Noble,* 55 Vt. 428; *Bank* v. *Cowles,* 180 N. Y. 346; *Baxter* v. *Little,* 6 Met. 10; *Bissel* v. *Currab,* 69 Ill. 20; *Chandler* v. *Drew,* 6 N. H. 469; *Codington* v. *Bank,* 40 App. D. C. 409; *Collins* v. *Gilbert,* 94 U. S. 753; *Cover* v. *Myers.* 75 Md. 446; *Crosby* v. *Buchanan,* 23 Wall. 420; 1 Dan. Neg. Inst. 6th ed. secs. 775, 815; *Davis* v. *Miller,* 14 Gratt. 1; *Downing* v. *Gibson,* 53 Iowa, 517; *Dresser* v. *R. R. Co.* 93 U. S. 92; *Durant* v. *Murdock,* 3 App. D. C. 114; *Dobbins* v. *Collins,* 26 App. D. C. 161; *Emerson* v. *Burns,* 114 Mass. 348; *Eversole* v. *Maull,* 50 Md. 95; *Fisher* v. *Leland,* 4 Cush. 456; *Fowler* v. *Brantley,* 14 Pet. 318; *Gleason* v. *Moen,* 2 Dyer, 642;

*Harrisburg Trust Co.* v. *Shufeldt,* 87 Fed. 669; *Hawkins* v. *Shoup,* 2 Ind. 342; *Hazen* v. *Van Senden,* 43 App. D. C. 161; *Hunleth* v. *Leahy,* 146 Mo. 418; *Re Hill,* 187 Fed. 214; *Jennings* v. *Carlucci,* 87 N. Y. Supp. 475; *Kilcrease* v. *White,* 6 Fla. 45; *King* v. *Doane,* 139 U. S. 166; *La Due* v. *First Nat. Bank,* cited in 31 Minn. 33; *Leavitt* v. *Peabody,* 62 N. H. 185; *Lytle* v. *Lansing,* 147 U. S. 68; *McKay* v. *Hall,* 39 L.R.A. 658; *McPherrin* v. *Little,* 44 L.R.A. 395; *Murray* v. *Lardner,* 2 Wall. 110; *Rea* v. *Missouri,* 17 Wall. 532; *Renwick* v. *Williams,* 2 Md. 356; *Simpson* v. *Hall,* 47 Conn. 417; *Smith* v. *Sac County,* 11 Wall. 139; *Stewart* v. *Lansing,* 104 U. S. 505; *Stewart* v. *Wyoming Ranch Co.* 128 U. S. 383; Story, Promissory Notes, sec. 178; *Strauss* v. *Hensey,* 7 App. D. C. 289; *Thompson* v. *Sioux Falls Nat. Bank,* 150 U. S. 231; *Totten* v. *Bucy,* 57 Md. 446; *Tyler* v. *Savage,* 143 U. S. 79; *United States* v. *West,* 8 App. D. C. 59.

*Mr. Daniel W. Baker,* for the appellee:

### First Proposition.

Whether or not, according to defendant's own affidavit, the note in suit was an account stated.

An account rendered, and not objected to within a reasonable time, is to be regarded as admitted by the party charged to be prima facie correct, and may not be impeached save for fraud, error, or mistake. *Riley* v. *Mattingly,* 42 App. D. C. 294; *Gordon* v. *Frazer,* 13 App. D. C. 382; *McPherson* v. *Harding,* 40 App. D. C. 407; *Talcott* v. *Chew,* 27 Fed. 273; *Rehill* v. *McTague,* 114 Pa. 94, 60 Am. Rep. 341, 7 Atl. 224; *Shipman* v. *Bank of State,* 126 N. Y. 318, 12 L.R.A. 791, 22 Am. St. Rep. 821, 27 N. E. 371; *Louisville Blg. Co.* v. *Asher,* 112 Ky. 138, 99 Am. St. Rep. 283, 65 S. W. 133; *Wiggins* v. *Burkham,* 10 Wall. 129, 19 L. ed. 319, 1 Sup. Ct. Rep. 178.

### Second Proposition.

Are any of the facts set up in the plea of set-off such as come within the rule that they are equities which a maker can set up against a person who is not a holder for value?

*Knight* v. *W. T. Walker Brick Co.* 23 App. D. C. 519; *Sim-*

mons v. *Jaselli*, 38 App. D. C. 250; *National Bank* v. *Texas*, 20 Wall. 72; *Drexler* v. *Smith*, 30 Fed. 755; *Wolf* v. *American Trust & Sav. Bank*, 214 Fed. 761; *McSherry* v. *Brooks*, 46 Md. 118; *Walker* v. *Wilson*, 79 Tex. 188.

Third Proposition.

Can set-off be placed by a maker of note, where that note has been transferred to a third party?

*Simpson* v. *Hall*, 47 Conn. 417; *Kilcrease* v. *White*, 6 Fla. 45; *Wilkins* v. *Jeffries*, 30 Ga. 153; *Whitaker* v. *Kuhn*, 52 Iowa, 315; *Hankins* v. *Shoup*, 2 Ind. 342; *Eversole* v. *Maxwell*, 50 Md. 95; *Hamfelt* v. *Leahy*, 146 Mo. 418; *Kelley* v. *Stead*, 136 Mo. 430; *Cutler* v. *Cutler*, 77 Mo. 388; *Barnes* v. *McMuller*, 78 Mo. 260; *Leavitt* v. *Peabody*, 62 N. H. 185; *Long* v. *Rhawn*, 75 Pa. 128; *Armstrong* v. *Noble*, 55 Vt. 428; *Davis* v. *Miller*, 14 Gratt. 1; *Davis* v. *Noble*, 38 W. Va. 66; *Haley* v. *Congdon*, 56 Vt. 65; *Harrisburg Trust Co.* v. *Shufeldt*, 87 Fed. 670.

Mr. Justice ROBB delivered the opinion of the Court:

The court below, after stating that the defendant had pleaded set-off in addition to the general issue, ruled that the plea of set-off is not available as against an indorser, even though the indorsement was made after maturity. No other question appears to have been considered.

The opinion of the trial court on the question decided, which we adopt, is as follows:

"This is a motion for judgment under the 73d rule. Plaintiff sues on a promissory note transferred to him by indorsement of the payee. The defendant pleads set-off, in addition to the general issue, and his affidavit of defense sets forth the facts upon which the set-off is founded. From the affidavit it appears that the set-off is based upon transactions with the payee and indorser of the note, not affecting the validity of, or consideration for, the note. Plaintiff took the note after maturity; and the question involved is whether the defendant can plead as a set-off against him—which he might have pleaded

against the original payee, had the note remained in the latter's hands.

"The answer is to be found in a construction of Code sections 1351 and 1362 [31 Stat. at L. 1401, 1402, chap. 854] relating to negotiable instruments, and section 1566 [31 Stat. at L. 1423, chap. 854] relating to set-off.

"Section 1351 reads as follows: 'An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise.'

"Section 1362 reads: 'In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.'

"In the instant case, there is no claim that the note upon which suit is brought has been either 'restrictively indorsed' or 'discharged by payment or otherwise.' By the express terms of the Code, therefore, it continues to be a negotiable instrument after maturity.

"Under other section of the Code, defining a holder in due course, it is equally evident that plaintiff is not such holder. Section 1362 fixes his rights. The note in his hands 'is subject to the same defenses as if it were non-negotiable.' 'But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.'

"Plainly this language refers only to defenses affecting the instrument. 'The plea of set-off is in the nature of a cross action by the defendant, who, it is declared in the Code, "shall be deemed to have brought an action, at the time of filing such plea, against the plaintiff for the matters mentioned in the plea." ' McGuire v. Gerstley, 26 App. D. C. 193.

"Set-off is a creature of statute, unknown to the common law; and authority to avail of it must, of course, be granted by the statute. The only provision of the District Code which

has relation to the question here involved is sec. 1566 [31 Stat. at L. 1423, chap. 854] which reads as follows: 'Effect of Assignment.—When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim or set-off could have been pleaded, neither can be deprived of the benefit thereof by an assignment by the other; but in an action by the assignee of any non-negotiable debt the defendant may set off any indebtedness to him of the assignor, existing before notice of the assignment, as well as any indebtedness to him of the plaintiff.'

"Taking this section as a whole, it is resolved into the statement that in an action by the assignee of any non-negotiable debt, the defendant may set off any indebtedness to him of the assignor. The terms used are wholly inapplicable to negotiable instruments. According to accurate legal terminology, the person who transfers a promissory note is not called an assignor, but an indorser; the person to whom it is transferred is not designated the assignee, but the indorsee; and the use of the words, 'non-negotiable debt,' as meaning a negotiable promissory note would be a startling neologism.

"In the able and exhaustive brief filed by defendant's counsel cases are cited from other jurisdictions in which the right to maintain a set-off under circumstances similar to those involved here have been maintained. But in every instance an examination discloses that the decisions are based upon statutes differing in important particulars from the provisions of the Code of this District. Thus, in *McKay* v. *Hall*, 30 Okla. 773, 39 L.R.A.(N.S.) 658, 120 Pac. 1108, the Oklahoma supreme court permitted a set-off under the conditions existing in the instant case; but its decision was based upon sec. 5559, of Snyder's Compiled Laws, which provides that, 'in the case of an assignment of a thing in action, the action of the assignee shall be without prejudice to any set-off or other defenses now allowed; but this action shall not apply to negotiable bonds, promissory notes, or bills of exchange transferred in good faith and upon good consideration before due.' The court quite naturally held that the exception of negotiable promissory notes 'transferred in good faith and upon good consideration before

due' indicated that the right of set-off applied as against such instruments transferred after they were due. This was an accurate application of the maxim, *Expressio unius est exclusio alterius.*

"The case of *Downing* v. *Gibson,* 53 Iowa, 517, 5 N. W. 699, also cited by defendant's counsel, was decided under a statute almost identical with the section of the Oklahoma law above quoted, differing in the same important particular from sec. 1566 of the District Code.

"It was argued at the oral hearing of the motion that to permit the payee of a note to transfer it to a third party to prevent the maker from pleading a set-off which he had against the payee, worked a grevious wrong to the maker. This contention was disposed of by the supreme court of New Hampshire in *Leavitt* v. *Peabody,* 62 N. H. 185, in the following language:

" 'The negotiability of a promissory note is not affected by its dishonor. The payee can transfer to another the maker's promise as effectively after as before maturity. [Citing cases.] The doctrine that in an action by the assignee the maker may set off his demands against the payee makes the note to the extent of those claims non-negotiable; or, rather, makes its negotiability depend not upon the terms of the contract, but upon the accidental circumstances that at the time of the transfer the payee is, or is not, indebted to the maker; and, if he is, that the latter does or does not elect to assert his right of set-off. *Whitehead* v. *Walker,* 10 Mees & W. 698, 152 Eng. Reprint, 652, 12 L. J. Exch. N. S. 28. In short, it places overdue bills of exchange and promissory notes upon the same footing in this respect as unassignable choses in action. *Baxter* v. *Little,* 6 Met. 10, 39 Am. Dec. 707.

" 'There is no good reason why one who agrees to pay his note to bearer, or to such person as the payee may order, should not be required to perform his agreement according to its terms. If it is assigned before maturity, he may be compelled to pay a demand which, as between him and the payee, is not justly due; but whether it is assigned before or after maturity, there is no reason why he should not be required to pay whatever is equitably due, and to the person to whom, by the contract, he

has agreed to pay it. To permit a debtor to extinguish his creditor's demand by applying upon it his claims against a third person is not equitable. Instead of compelling a performance, it sanctions a breach of the contract—as much as it would to permit him to satisfy the debt in counterfeit coin. * * * By its express terms, the maker authorizes the payee to assign, and his assignee to accept the assignment, as well after as before the note falls due. He is bound to anticipate that it may be negotiated after maturity if it is then unpaid and not otherwise extinguished, and he has no right to give credit upon the faith that it will not be. It cannot be a fraud upon the maker to do that which he has authorized to be done. It is rather a fraud upon the assignee to give the contract an effect so essentially different from that which it purports on its face to have. The right of set-off is "a personal privilege, and not an incident or accompaniment of the debt," and is contingent upon the existence of mutual debts at the time suit is commenced. [Citing cases.] In the last-named case it was held that the set-off could not be allowed, although the note was assigned for the express purpose of defeating it.

" 'The equities, infirmities, and defenses available against the indorsee of an overdue note are such as arise out of the transaction on account of which it was given, and go to show that it never had a legal existence, as illegality, or want of consideration, duress, and the like; or, if valid in its inception, such as show that it has been, prior to the transfer, extinguished, as by payment. If the note is not indorsed, and an action to enforce payment is brought by the payee, they must be asserted in answer to that suit, or the benefit of them is forever lost. They afford in such case no ground for an independent action in favor of the maker. A set-off, on the contrary, is not a defense, but a cross action. It concedes the validity of the plaintiff's claim, and is founded upon an independent cause of action in favor of the defendant, who may at his election assert it by way of set-off, or enforce it by a separate suit.'

"Other cases in accord are *Simpson* v. *Hall,* 47 Conn. 417; *Kilcrease* v. *White,* 6 Fla. 45; *Hankins* v. *Shoup,* 2 Ind. 342; *Eversole* v. *Maull,* 50 Md. 95; *Hunleth* v. *Leahy,* 146 Mo. 418,

48 S. W. 459; *Armstrong* v. *Noble, 55* Vt. 428; *Davis* v. *Miller,* 14 Gratt. 1.

"The language of the circuit court of appeals for the ninth circuit, in *Harrisburg Trust Co.* v. *Shufeldt,* 31 C. C. A. 190, 59 U. S. App. 532, 87 Fed. 669, has a direct bearing upon the question herein discussed. 'But a set-off is not a "defense," as that term is ordinarily used (*Chandler* v. *Drew,* 6 N. H. 469, 26 Am. Dec. 704; Waterman, Set-off, secs. 5, 6), and is never pleadable as a defense unless it is expressly made so by statute. "The rule that a party taking an overdue bill or note takes it subject to the equities to which the transfer is subject does not extend so far as to admit set-offs which might be available against the transferrer. A set-off is not an equity, and the general rule stated is qualified and restricted to those equities arising out of the bill or note transaction itself, and the transferee is not subject to a set-off which would be good against the transferrer arising out of a collateral matter." 2 Dan. Neg. Inst. 1455a; Chitty, Bills, 13th Am. ed. 251. The set-off in this case is not connected with the note, or with the consideration for the note, or the circumstances under which it was given. It is not a defense to the note or to liability thereunder. It is a separate and independent cause of action, existing in favor of the defendant, which, by virtue of the statute only, is permitted to be set off against the plaintiff's debt for the purpose of adjusting mutual demands and avoiding unnecessary litigation. It follows, therefore, that it is immaterial whether the plaintiff's title to the note was equitable or legal. In either case, the right to plead a set-off against it must depend upon the terms of the statute.   *   *   *'

"From the foregoing it is concluded:

"1st. That by the express terms of the Code a negotiable note retains its negotiability after maturity unless restrictively indorsed or discharged by payment or otherwise.

"2d. That the indorsee after maturity takes it subject to defenses which affect the instrument itself, and not subject to matters of defense arising out of independent transactions between the maker and payee.

"3d. That the description, 'assignee of a non-negotiable debt,'

in sec. 1566 of the Code [31 Stat. at L. 1423, chap. 854] does not include the indorsee of a negotiable overdue promissory note."

But it is alleged by the defendant that at the time he signed the note sued upon the payee, the Standard Lime & Stone Company, "wrongfully and fraudulently concealed and withheld from the affiant an accounting of sales of its crushed or broken stone made directly to persons in the District of Columbia, upon which commissions were due this affiant." It is further alleged that these commissions were considerably greater in amount than the face of the note sued upon, and that by reason thereof the consideration for the note had wholly failed. If defendant makes good that averment at the trial it is clear that the alleged accounting will be impeached, as having been procured by "fraud, error, or mistake" (*Riley* v. *Mattingly,* 42 App. D. C. 290, 294), for the affidavit of defense raises a question as to the good faith of one of the parties to the accounting. It is equally clear that want of consideration is a defense as available against an indorsee after maturity as against the payee. Code, sec. 1362 [31 Stat. at L. 1402, chap. 854] *Durant* v. *Murdock,* 3 App. D. C. 114, 120; *Hazen* v. *Van Senden,* 43 App. D. C. 161; *Eversole* v. *Maull,* 50 Md. 95.

It follows that the judgment must be reversed, with costs, and the cause remanded for a new trial.

*Reversed and remanded.*